**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JOSHUA FULLER-LAYTON and JOHN SHADE III, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiffs, | JUDGE: _____ |
| v. | |
| STAKE CENTER LOCATING, LLC | JURY DEMANDED |
| Defendant. | |

**COMPLAINT**

## I.    INTRODUCTION

1.      This is an action brought by Joshua Fuller-Layton and John Shade III ("Named Plaintiffs") on behalf of themselves and all others similarly situated against Stake Center Locating, LLC ("Defendant" or "Stake").

2.      Named Plaintiffs bring their federal claims against Defendant in order to recover compensation, liquidated damages, attorneys' fees and costs, and other equitable relief pursuant to the Fair Labor Standard Act of 1939 ("FLSA"), as amended 29 U.S.C. § 201 *et seq*. Named Plaintiffs seek Court Supervised Notice pursuant to 29 U.S.C. § 216(b) to inform other similarly situated employees of their rights under the FLSA.

3.      Named Plaintiffs bring their Ohio claims against Defendant in order to recover compensation, liquidated damages, attorneys' fees and costs, and other equitable relief pursuant to the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Ann. §§ 4111 *et. seq*., (the "Ohio Wage Act"), the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code Ann. § 4113.15, (the Ohio Wage Act and the OPPA will be collectively referred to as the "Ohio Acts") and Ohio Rev. Code

1

Ann.§ 2307.60. Named Plaintiffs bring their Ohio Acts and Ohio Rev. Code Ann. § 2307.60 on behalf of themselves and all similarly situated employees from Ohio who file their written consent to join this action pursuant to Ohio Rev. Code Ann. § 4111.14(k). Named Plaintiffs seek Court Supervised Notice pursuant to Ohio Rev. Code Ann. § 4111.14(k).

4.      Named Plaintiffs and those similarly situated (hereafter, "Putative Plaintiffs") are current and former employees of Defendant who did not receive one and a half times their regular rate for all hours worked over forty (40) in a workweek.

5.      Under the FLSA and the Ohio Wage Act, Defendant was required to pay for all hours Named Plaintiffs and Putative Plaintiffs worked and pay them 150% of their regular rate for all hours worked over forty (40) in a workweek. By willfully failing to compensate Named Plaintiffs and Putative Plaintiffs who performed pre-shift, meal break, and post-shift work, Defendant violated the FLSA and the Ohio Acts.

## II.      JURISDICTION AND VENUE

7.      The jurisdiction of this Court is invoked pursuant to federal question jurisdiction under 28 U.S.C. § 1331, in that this case arises under a federal law of the United States.

8.      This Court has supplemental jurisdiction over Named Plaintiffs, and the Putative Class Members' Ohio Acts claims pursuant to 28 U.S.C. § 1367 because these claims are so related to Named Plaintiffs' claims under the FLSA that they form part of the same controversy.

9.      Venue in the Southern District of Ohio is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district.

### III.     THE PARTIES

10.     Joshua Fuller-Layton ("Named Plaintiff Fuller-Layton") is an adult resident of Mount Vernon, Ohio residing at 117 Martinsburg Road, Mount Vernon, Ohio 43050-4108. Named Plaintiff Fuller-Layton was employed by Defendant as an hourly non-exempt Fiber Locator Technician – Level 7 ("Utility Locator") from April 2018 until July 2023 and October 2024 until July 2025. His consent form is attached hereto as **Exhibit A** and is filed with this Complaint pursuant to 29 U.S.C. § 216(b).

11.     John Shade III ("Named Plaintiff Shade") is an adult resident of Millersport, Ohio residing at 3433 Shepard Avenue, Millersport, Ohio. Named Plaintiff Shade was employed by Defendant as an hourly non-exempt Lead Fiber Locator Technician ("Lead Utility Locator"). He started working for Defendant on or about January 31, 2023, and is currently employed by Defendant. His consent form is attached hereto as **Exhibit B** and is filed with this Complaint pursuant to 29 U.S.C. § 216(b).

12.     Utility Locators and Lead Utility Locators will be collectively referred to as "Hourly Utility Locators."

13.     The Putative Plaintiffs are all non-exempt employees employed by Defendant as within three (3) years preceding the commencement of this action who were not paid overtime at a rate of 150% their respective regular rates for all hours worked over forty (40) in a workweek.

14.     Defendant Stake Center Locating, LLC is a limited liability company registered to do business in the state of Ohio. Process may be served upon its Registered Agent: Corporation Service Company, 1160 Dublin Road, Suite 400, Columbus, OH 43215.

### IV.     FACTUAL ALLEGATIONS

15.     During all times material to this Complaint, Defendant was an employer within the meaning of the FLSA, the Ohio Acts, and Ohio Rev. Code Ann. § 2307.60.

3

16.     During all times material to this Complaint, Defendant employed Named Plaintiff and the Putative Plaintiffs within the meaning of the FLSA and the Ohio Acts.

17.     During all times material to this Complaint, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 per year (exclusive of excise taxes at the retail level).

18.     During all times material to this Complaint, Named Plaintiffs and the Putative Plaintiffs were Defendant's employees pursuant to the Ohio Acts and have been individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-07.

19.     During all times material to this Complaint, Defendant hired and continued to employ Named Plaintiffs and the Putative Plaintiffs.

20.     During all times material to this Complaint, Named Plaintiffs and the Putative Plaintiffs were classified as non-exempt and paid at an hourly rate, and thus were entitled to be paid at least 150% of their regular rate for all hours worked over forty (40) in a workweek.

21.     Defendant is a utility locating company[1] that provides "complete coverage in all 48 contiguous states," including Ohio.[2]

_____

[1] *Stake Center*, https://www.stakecenter.com/ (last visited Sept. 17, 2025).

[2] *Service Areas*, https://www.stakecenter.com/service-areas/ (last visited Sept. 17, 2025).

22. Defendant is the third largest locating company in the United States.[3]

23. During all times material to this Complaint, Named Plaintiffs and the Putative Plaintiffs regularly worked beyond forty (40) hours in a workweek.

24. As a Locator, Named Plaintiff Fuller-Layton's job was to locate underground utilities; troubleshoot; mark the ground using paint and flags; document utility damage, if a Lead Fiber Locator Technician and Area Manager were unavailable; and promote damage prevention.[4]

25. As a Lead, Named Plaintiff Shade's job is to locate underground utilities; troubleshoot; mark the ground using paint and flags; review and close open tickets without first visiting the work site; liaise with contractors and clients; document damage to utility lines, if an Area Manager is unavailable; and promote damage prevention.

26. During all times material to this Complaint, Named Plaintiffs and the Putative Plaintiffs have been employed by Defendant as Utility Locators, with their primary job duties being to locate utilities underground, mark the ground using paint and flags, and document any damage.

27. During all times material to this Complaint, Defendant recorded Named Plaintiffs and the Putative Plaintiffs' hours worked using the software system UtiliSphere.

28. During all times material to this Complaint, Defendant closely monitored the work of Named Plaintiffs and Putative Plaintiffs to balance productivity verses cost. To accomplish this, Defendant assigned and tracked work assignments through a software program known as

---

[3] *See* Complaint at 2, *Wolfe v. Stake Center Locating*, No. 230402591, Ct. Com. Pl., Phila. Cnty., Apr. 25, 2023.

[4] Locate Technician – Findlay, OH, stakecenterlocating.com, https://stakecenterlocating.hrmdirect.com/employment/job-opening.php?req=3479728&req_loc=941660&&cust_sort1=247313&#job (last accessed Sept. 18, 2025)

UtiliSphere. Work assignments were referred to as "tickets." A ticket tracked the location of the work site, the type of work that needed to be performed, and the number of "members" (utility providers) associated with each work site.

29.     As part of their employment, Defendant's Utility Locators are required to service a certain number of members per hour ("MPH"). Each Utility Locator's productivity is tracked using a "budget" and each Utility Locator's target budget varies depending on their assigned work location and Defendant's needs. Each Utility Locator receives regular e-mails that track their MPH and explain how it relates to their target budget. The goal of this e-mail is to encourage each Utility Locator to meet or exceed their budget.

30.     During all times material to this Complaint, Named Plaintiffs and the Putative Plaintiffs could be assigned to one of two shifts during their workday: Day Shift or the On Call Shift. The assigned shifts varied and were not exclusive—Named Plaintiffs and the Putative Plaintiffs typically worked at least one of each shift during their employment.

*On Call Shift*

31.     Defendant scheduled Named Plaintiffs and Putative Plaintiffs to be available to work from 5:00 p.m. until 7:00 a.m. when they were scheduled for the On Call Shift. Although Named Plaintiffs and the Putative Plaintiffs were required to be available for work from 5:00 p.m. until 7:00 a.m., pursuant to Defendant's companywide policy they were not on-the-clock.

32.     During the On Call Shift, Defendant's companywide policy required Named Plaintiffs and Putative Plaintiffs to keep their work phone on and with them. If Named Plaintiffs and Putative Plaintiffs received a call on their work phone, Defendant required them to answer the automated call and go through the prompts to accept the work assignment. Then, Defendant required Named Plaintiffs and Putative Plaintiffs to turn on their work computer; log into

6

UtiliSphere; sync UtiliSphere; find the ticket at issue; review the ticket to identify the problem, and the site location; and accept the ticket—all while off-the-clock.

33.     Once the Named Plaintiff and the Putative Plaintiffs accepted the ticket, they would load into their work vehicle, clock in, and drive to the site to address the issue.

34.     Defendant's companywide policy required Named Plaintiffs and Putative Plaintiffs to respond to emergency tickets within two (2) hours.

35.     Once they received an emergency ticket, Named Plaintiffs and the Putative Plaintiffs were required to either accept the ticket, or if they were already responding to another ticket and thus unavailable, to contact the contractor who initiated the ticket and resolve the conflict.

36.     Named Plaintiffs and the Putative Plaintiffs would then clock out after they returned home and exited their work vehicle. Pursuant to Defendant's companywide policy Named Plaintiffs and Putative Plaintiffs were then required to continue to monitor their phones and respond to additional calls until their shift ended at 7:00 a.m.

37.     Hours worked by a Utility Locator during the On Call Shift were paid at a higher hourly rate of 1.5x the Utility Locator's Day Shift rate.

*Day Shift*

38.     During all times material to this Complaint, Utility Locators assigned Day Shift were scheduled to work from 7:00 a.m. to 5:00 p.m.

39.     From 2022 until sometime in 2023, Named Plaintiffs and the Putative Plaintiffs were not required to be at their first job site until 9:00 a.m. Before going to their first job site, Named Plaintiffs and the Putative Plaintiffs were permitted approximately one hour to work from home. During the one hour prep time, Named Plaintiffs and the Putative Plaintiffs logged into UtiliSphere; check if there were any outstanding Emergency Tickets; ensure that the work ticket

they'd reserved was still available; screen tickets that could be resolved remotely; handle calls with clients or contractors; respond to e-mails; plan their work day; perform a vehicle inspection; load supplies and equipment into their work truck; and drive to their first work site.

40.     During the drive to the first job site, Named Plaintiffs and the Putative Plaintiffs would respond to work calls and attempt to resolve remote tickets.

*Unpaid Pre-Shift Work*

41.     At some point in 2023, Defendant removed the one hour prep time and required Named Plaintiffs and the Putative Plaintiffs to only clock in after arriving at the first worksite and to arrive at the worksite no later than 8:00 a.m.

42.     These changes meant that the time Named Plaintiffs and the Putative Plaintiffs spent working before and during the travel to their first worksite had to be performed off-the-clock.

43.     On or around the beginning of 2024, Defendant again changed its policies and required Named Plaintiffs and the Putative Plaintiffs to arrive at their first worksite and clock in at 7:00 a.m.

44.     Named Plaintiffs and the Putative Plaintiffs continued to have to perform their pre-shift prep work both before and during the travel to the first worksite off-the-clock.

*Unpaid Post-Shift Work*

45.     Pursuant to Defendant's companywide policy Named Plaintiffs and Putative Plaintiffs were required to keep their work phones on and respond to calls until 5:00 p.m., even though they had typically already finished their last job of the day and clocked out.

46.     Pursuant to Defendant's companywide policy Named Plaintiffs and the Putative Plaintiffs were required to clock out at their final worksite of the day.

47.     In order to keep up with their workload, Named Plaintiffs and the Putative Plaintiffs had to complete post-shift work, such as answering emails, client calls, unloading supplies from their work vehicle, and a post route vehicle inspection all while off-the-clock.

48.     Although Defendant knew Named Plaintiffs and the Putative Plaintiffs had to complete this work at the end of their shift, and could only complete it after returning home, it was Defendant's companywide policy to not permit Named Plaintiffs and the Putative Plaintiffs to remain clocked in for this work time.

49.     During the slower months (which occur in the winter), Defendant notified Named Plaintiffs and Putative Plaintiffs that there was a mandatory eight (8) hour cap on the number of hours they were going to be paid. Even with this compensation cap is in place, Defendant still expected Named Plaintiffs and Putative Plaintiffs to have their work phones turned on and to respond to calls from 7:00 a.m. until 5:00 p.m.

*Unpaid Meal Break*

50.     Pursuant to Defendant's companywide policy, Named Plaintiffs and the Putative Plaintiffs were required to clock out for thirty (30) minutes for a meal break, regardless of whether they actually received an undisturbed thirty (30) minute break.

51.     Due to Defendant's strict MPH requirements, Named Plaintiffs and the Putative Plaintiffs were required to work continuously throughout their workday in order to meet their ticket quota.

52.     Failure to meet their MPH requirements could result in the Named Plaintiffs and Putative Plaintiffs being disciplined, which could include termination.

53.     Although Named Plaintiffs and the Putative Plaintiffs could not take an undisturbed thirty (30) minute break and meet their MPH requirements, Defendants continued to require Named Plaintiffs and the Putative Plaintiffs to clock out for thirty (30) minutes.

9

54. Should the Named Plaintiffs and the Putative Plaintiffs fail to record a thirty (30) minute meal break each workday, they could also be disciplined.

55. After being hired, Named Plaintiff Shade did not take a thirty (30) minute meal break due to his busy shift and therefore did not record a meal break in his time records. Because Named Plaintiff Shade did not record a meal break in his time records, his direct supervisor disciplined him and informed him that he always had to record taking a thirty (30) minute meal break.

56. After this conversation, Named Plaintiff Shade continued to work without taking his thirty (30) minute meal break but, because he had the ability to edit his own time card, he went back and edited his time card to include a thirty (30) minute break. His direct supervisor again disciplined him because, during a routine audit, he noticed that Named Plaintiff Shade was performing work in UtiliSphere when he was clocked out for his thirty (30) minute break.

57. The effect of Defendant's policies are such that the only way to not be disciplined is to work throughout their shift without stopping—in order to meet the MPH requirements—and to deduct thirty (30) minutes from their own pay for a meal break they did not take—in order to avoid discipline for not recording one.

58. During all times material to this Complaint and upon information and belief, Defendant was aware that Named Plaintiff and the Putative Plaintiffs often worked approximately thirty (30) minutes before and after their scheduled shifts and permitted this to occur.

59. During all times material to this Complaint, Defendant did not have a formal process or mechanism for Named Plaintiff and the Putative Plaintiffs to report time worked outside of when they were permitted to clock in pursuant to Defendant's companywide policies; however, Defendant did record the work performed off-the-clock on the Utilisphere program and by tracking the driving time.

*Regular Rate Violation*

60.     Further Defendant failed to pay Named Plaintiffs and the Putative Plaintiffs overtime wages at a rate of time and one half their regular rate of pay.

61.     Specifically, Defendant failed to properly calculate Named Plaintiffs and the Putative Plaintiffs' regular rates of pay.

62.     Defendant paid Named Plaintiffs and the Putative Plaintiffs taxable vehicle pay each workweek, which Defendant excluded when calculating the regular rates of pay for overtime purposes.

63.     In addition, Defendant paid Named Plaintiffs and the Putative Plaintiffs taxable per diems each workweek, which Defendant also excluded when calculating the regular rates of pay for overtime purposes.

64.     As a result of these exclusions, Defendant violated the FLSA and Ohio Acts by failing to pay Named Plaintiffs and the Putative Plaintiffs overtime wages at a rate of not less than one and one-half times their regular rate of pay—based on *all* renumeration received—for hours worked in excess of forty (40) hours each workweek.

65.     Defendant maintained policies that provided employees will be paid only for their scheduled shifts—even if they worked more than that—or, if assigned to the On Call shift, employees will only be paid when on their way to the emergency ticket—and not for the time handling the call or prep work that needed to be done before traveling to the ticket. These policies deliberately exclude from compensation the hours employees actually worked outside their scheduled shifts or while preparing to respond to an emergency ticket while On Call even though Defendant knew that employees routinely performed such work.

66.     Defendant's policies also required Named Plaintiffs and the Putative Plaintiffs to perform work during their unpaid meal breaks.

11

67. Finally, Defendant failed to pay Named Plaintiff and the Putative Plaintiffs the proper rate of overtime due to its exclusions of certain renumerations.

68. During all times material to this Complaint, the off-the-clock work performed by the Named Plaintiffs and Putative Plaintiffs qualified as overtime hours.

69. During all times material to this Complaint, Defendant's failure to pay Named Plaintiff and the Putative Plaintiffs for all hours worked over forty (40) at one-and one-half times their proper regular rates was a violation of the FSLA and Ohio Wage Acts.

70. During all times material to this Complaint, Defendant knowingly, willfully, or with reckless disregard carried out this illegal pattern or practice of failing to pay Named Plaintiffs and the Putative Plaintiffs for all hours worked, including all hours worked over forty (40) in a work week at an amount equal to 150% of their regular rate.

71. During all times material to this Complaint, Defendant's pay practice of not paying Named Plaintiffs and the Putative Plaintiffs for all hours worked, including all hours worked over forty (40) in a workweek at an amount equal to 150% of their regular rate, was willful and not in good faith.

## V. COURT SUPERVISED NOTICE PURSUANT TO 29 USC § 216(b) ALLEGING FLSA VIOLATIONS

72. Named Plaintiffs re-allege, and incorporate by reference, the allegations set forth in the preceding paragraphs.

73. Named Plaintiffs request that the Court issue Court Supervised Notice to the following group of current and former employees defined as:

> **All current and former Hourly Utility Locators who worked for Stake Center Locating, LLC in Ohio, at any time within the three (3) years preceding the commencement of this action through the present ("Employees Entitled to Notice").**

74.     Named Plaintiffs reserve the right to amend and refine the definition of the Employees Entitled to Notice they seek to have the Court serve notice based upon further investigation and discovery.

75.     The precise size and identity of the proposed Employees Entitled to Notice should be ascertainable from the business records, tax records, and/or employee and personnel records of Defendant.

76.     Court Supervised Notice pursuant to 29 U.S.C. § 216(b) to the Employees Entitled to Notice is appropriate because there exists at least a strong likelihood that they are similarly situated to the Named Plaintiffs.

77.     Sending Court Supervised Notice pursuant to 29 U.S.C. § 216(b) to the Employees Entitled to Notice is appropriate because they have been subjected to single companywide policies and common business practices referenced in the paragraphs above, and the success of their claims depends upon the resolution of common issues of law and fact, including inter alia, whether Defendant satisfied the FLSA's requirements for paying them at a rate not less than one and one-half (1 ½) their regular rate of pay for all hours worked in excess of forty (40) hours each workweek.

78.     Named Plaintiffs and the Employees Entitled to Notice, having willfully been not paid their entitled compensation for work they performed pursuant to the common policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law.

79.     The Named Plaintiffs and the Employees Entitled to Notice have been similarly affected by the violations of Defendant in workweeks during the relevant time period, which amount to a single decision, policy, or plan to willfully avoid paying all earned FLSA compliant wages.

13

80.     Named Plaintiffs seek to have the Court send supervised notice pursuant to 29 U.S.C. § 216(b), as defined above, to the proposed group of similarly situated current and former employees, i.e., Employees Entitled to Notice.

81.     Named Plaintiffs are similarly situated to the Employees Entitled to Notice and will prosecute this action vigorously on their behalf.

82.     Named Plaintiffs intend to send notice to all the Employees Entitled to Notice pursuant to Section 216(b) of the FLSA. The names and addresses of the Employees Entitled to Notice are available from Defendant's records. For the purpose of notice and other purposes related to this action, their names, addresses, email addresses, and phone numbers are readily available from Defendant. Notice can be provided by means permissible under the FLSA.

83.     Named Plaintiffs and the Employees Entitled to Notice have been similarly damaged by Defendant's willful refusal to pay minimum wages for all hours worked, including failing to pay 150% of Named Plaintiffs' and the Employees Entitled to Notice's regular rate for all hours worked beyond forty (40) in a workweek.

84.     As a result of Defendant's FLSA violations, Named Plaintiffs and the Employees Entitled to Notice are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

85.     Any alleged defenses Defendant may raise will be common to the Named Plaintiffs and the Employees Entitled to Notice.

## VI.     <u>CAUSES OF ACTION</u>

### <u>COUNT I</u>
### VIOLATION OF THE FAIR LABOR STANDARDS ACT

86.     Named Plaintiffs re-allege, and incorporate by reference, the allegations set forth in the preceding paragraphs.

87. During the time period beginning approximately three (3) years preceding the commencement of this action to the present, Defendant was an employer of Named Plaintiffs and Employees Entitled to Notice within the meaning of 29 U.S.C. § 203(d).

88. During the time period from approximately three (3) years preceding the commencement of this action to the present, Named Plaintiffs and the Employees Entitled to Notice were employed by Defendant within the meaning of 29 U.S.C. § 203(e)(1).

89. During the time period from approximately three (3) years preceding the commencement of this action to the present, Defendant employed Named Plaintiffs and the Employees Entitled to Notice within the meaning of 29 U.S.C. § 203(g).

90. During the time period from approximately three (3) years preceding the commencement of this action to the present, Defendant was an employer subject to the FLSA.

91. During all times material to this Complaint, Named Plaintiffs and the Employees Entitled to Notice have not been exempt from receiving overtime benefits under the FLSA because, inter alia, they were not "executive," "administrative," or "professional" employees, as those terms are defined under the FLSA. *See* 29 C.F.R. §§ 541.0, *et seq.*

92. At all times material to this Complaint, Defendant regularly employed Named Plaintiffs and the Employees Entitled to Notice to work more than forty (40) hours in a workweek.

93. Defendant violated federal law because it knew or should have known that Named Plaintiffs and the Employees Entitled to Notice should have been paid overtime at a rate not less than time and one-half their regular rate of pay for all hours worked over forty (40) in a workweek, including work performed off-the-clock.

94. Defendant, as described above, violated the FLSA, 29 U.S.C. § 207, by failing to pay Named Plaintiffs and the Employees Entitled to Notice at the appropriate overtime rate for all hours worked in excess of forty (40) per workweek.

15

95.    Named Plaintiffs and the Employees Entitled to Notice should have been paid 150% of their regular rate for all hours worked beyond forty (40) in a workweek during the three years from the filing date of the Complaint or when they join this lawsuit.

96.    Defendant willfully violated and continues to willfully violate the FLSA, by having engaged and continuing to engage in conduct, which demonstrates a willful and/or reckless disregard for the provisions of the FLSA.

97.    Named Plaintiffs and the Employees Entitled to Notice are entitled to unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available as compensation for Defendant's violations of FLSA, by which the Named Plaintiffs and the Employees Entitled to Notice have suffered and continue to suffer damages.

## COUNT II
## VIOLATION OF THE OHIO WAGE ACT

98.    Named Plaintiffs re-allege, and incorporate by reference, the allegations set forth in the preceding paragraphs.

99.    The Ohio Wage Act provides that covered employees shall be compensated for every hour worked in one workweek. *See* Ohio Rev. Code Ann. §§ 4111, *et seq*.; *see* also 29 U.S.C. § 206(b).

100.    The Ohio Wage Act provides that employees shall receive overtime compensation at a rate "not less than one and one-half times" the employee's regular rate of pay for all hours worked over forty (40) hours in one workweek, "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the Fair Labor Standards Act of 1937." Ohio Rev. Code Ann. § 4111.03(A); 29 U.S.C. § 207(a)(1).

101.    At all times material to this Complaint, Defendant was an employer covered by the Ohio Wage Act and is required to comply with its mandates.

16

102. At all times material to this Complaint, Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Ohio were covered "employees" of Defendant pursuant to the Ohio Wage Act and thus entitled to the Ohio Wage Act's protections.

103. At all times material to this Complaint, Defendant regularly employed Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Ohio to work more than forty (40) hours in a workweek.

104. At all times material to this Complaint, Defendant violated the Ohio Wage Act by repeatedly failing to compensate Named Plaintiffs and Employees Entitled to Notice who join this lawsuit from Ohio for all hours worked, including Defendant's repeated action of refusing to compensate Named Plaintiffs and Employees Entitled to Notice who join this lawsuit from Ohio for all hours worked over forty (40) hours in a workweek at a rate not less than one and one-half times their regular rate.

105. Defendant violated the Ohio Wage Act because it knew or should have known Named Plaintiffs and the Putative Plaintiffs should have been paid overtime for all hours worked over forty (40) in a workweek, including work performed prior to or beyond their regularly scheduled hours.

106. Indeed, at all times material to this Complaint, Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Ohio did not receive one and one-half times their regular rate for all hours they worked in excess of forty (40) in a workweek.

107. Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Ohio are not exempt from the wage protections of Ohio Law. During relevant times, Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Ohio were not exempt from receiving overtime because they were not "executive," "administrative," "professional,"

17

"outside sales," or "computer" employees, as those terms are defined under the FLSA. Ohio Rev. Code Ann. § 4111.03(A) (West 2024); *see also* C.F.R. §§ 541 *et seq.*

108.    In violating the Ohio Wage Act, Defendant's acts and omissions have been of a willful, intentional, and bad faith nature or otherwise in reckless disregard of the Ohio Wage Act.

109.    Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Ohio are entitled to unpaid overtime and other compensation, interest and attorneys' fees, and all other remedies available as compensation for Defendant's violations of the Ohio Wage Act, by which the Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Ohio have suffered and continue to suffer damages.

<u>**COUNT III**</u>
**OHIO PROMPT PAY ACT- FAILURE TO PROMPTLY PAY WAGES**

110.    Named Plaintiffs re-allege, and incorporate by reference, the allegations set forth in the preceding paragraphs.

111.    At all times relevant to this Complaint, Defendant was the "employer" of Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Ohio and, as such, Defendant was required to comply with the Ohio Prompt Pay Act's provisions. *See* Ohio Rev. Code Ann. § 4113.15.

112.    The OPPA provides that employers shall pay covered employees all wages, including overtime, on or before the first day of each month for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and, on or before the fifteenth day of each month, for wages earned during the preceding calendar month. *See* Ohio Rev. Code Ann. § 4113.15(A).

113.    At all times material to this Complaint, Defendant has refused to pay Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Ohio all owed overtime

wages at one and one-half (1 ½) times their normal hourly rate and all wages at the statutorily mandate minimum wage rate, within thirty (30) days of performing the work. *See* Ohio Rev. Code Ann. § 4113.15(B).

114.     The wages of Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Ohio remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

115.     Defendant's violations of the OPPA have been of a willful, intentional, or bad faith nature or have otherwise exhibited a reckless disregard of the OPPA's provisions.

### COUNT IV
### VIOLATION OF OHIO REV. CODE ANN. § 2307.60 AND 29 U.S.C. § 216(a)

116.     Named Plaintiffs re-allege, and incorporate by reference, the allegations set forth in the preceding paragraphs.

117.     The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for willful violations of the FLSA.

118.     By its acts and omissions described herein, Defendant has willfully violated the FLSA, and Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit have been injured as a result.

119.     Ohio Rev. Code Ann. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

120.     As a result of Defendant's willful violations of the FLSA, Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit are entitled to compensatory and punitive damages pursuant to Ohio Rev. Code Ann. § 2307.60.

**PRAYER FOR RELIEF**

WHEREFORE, Named Plaintiffs, on behalf of themselves and the Putative Plaintiffs, pray that this Court enter the following relief:

A.     For an Order sending Court Supervised Notice to the FLSA Employees Entitled to Notice as defined herein and requiring Defendant to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative collective action members;

B.     In the event the Defendant seeks to have discovery on the issues of whether the FLSA Employees Entitled to Notice are similarly situated to the Named Plaintiffs, that the Court issue an order tolling the FLSA statute of limitation for the FLSA Employees Entitled to Notice as of the filing of this Complaint;

C.     Designating Named Plaintiffs as the representatives for the FLSA Employees Entitled to Notice and designating counsel of record as Class Counsel;

D.     Issuing proper notice to the FLSA Employees Entitled to Notice at Defendant's expense;

E.     Unpaid wages, including overtime wages and an equal amount as liquidated damages pursuant to the FLSA and the supporting regulations for the Named Plaintiffs and the FLSA Employees Entitled to Notice;

F.     A declaratory judgment that the practice complained of herein is unlawful under the Ohio Wage Act and the OPPA;

G.     Awarding Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Ohio the sum of 6% of the total unpaid wages or $200.00 for each instance of failure to pay wages owed within thirty days, whichever is greater, pursuant to the OPPA;

H.  Compensatory and punitive damages under Ohio Rev. Code Ann. § 2307.60;

I.  Awarding pre-judgment and post-judgment interest;

J.  Any other relief to which the Named Plaintiffs and Employees Entitled to Notice

may be entitled.

Dated: September 19, 2025.                    Respectfully submitted,

                                    /s/ Robert E. DeRose
                                    Robert E. DeRose (OH Bar No. 0055214)
                                    Nickole K. Iula (OH Bar. No. 0099895)
                                    Anna R. Caplan (OH Bar No. 0104562)
                                    BARKAN MEIZLISH DEROSE COX, LLP
                                    4200 Regent Street, Suite 210
                                    Columbus, OH 43219
                                    Phone: (614) 221-4221
                                    Facsimile: (614) 744-2300
                                    Email: bderose@barkanmeizlish.com
                                    niula@barkanmeizlish.com
                                    acaplan@barkanmeizlish.com

                                    By:  /s/ Clif Alexander
                                    Clif Alexander (application *pro hac vice*
                                    forthcoming)
                                    Texas Bar No. 24064805
                                    clif@a2xlaw.com
                                    Austin W. Anderson (application *pro hac vice*
                                    forthcoming)
                                    Texas Bar No. 24045189
                                    austin@a2xlaw.com
                                    Carter T. Hastings (application *pro hac vice*
                                    forthcoming)
                                    Texas Bar No. 24101879
                                    carter@a2xlaw.com
                                    ANDERSON ALEXANDER, PLLC
                                    101 N. Shoreline Blvd, Suite 610
                                    Corpus Christi, Texas 78401
                                    Telephone: (361) 452-1279
                                    Facsimile: (361) 452-1284

                                    *Attorneys for Plaintiffs*

## <u>JURY DEMAND</u>

Plaintiff requests a trial by jury on all their claims.

*/s/ Robert E. DeRose*
Robert E. DeRose
*Attorney for Plaintiffs*
